CALVIN RAYMOND BROOKS ET AL., APPELLEES, V. WILLIAM
A. BROOKS ET AL., APPELLANTS.

FILED NOVEMBER 10, 1920.    No. 21084.

1. **Witnesses: COMPETENCY.** Where a party to an action who, on the
   face of the record, is adversely interested to the representative
   of a deceased person, and in the absence of fraud or mistake files
   a disclaimer of any and all interest in the subject-matter of the
   action, such person is estopped from asserting any right, interest
   or claim in or to the subject-matter of such action, and such party
   is a competent witness as against such representative.

2. **Deeds: DELIVERY: BURDEN OF PROOF.** "A deed takes effect only from
   the time of delivery. The possession of a deed by the grantee, in
   the absence of opposing circumstances, is *prima facie* evidence
   of delivery, and the burden of proof is on him who disputes this
   presumption." *Roberts v. Swearingen*, 8 Neb. 363.

3. ———: ———: PRESUMPTION. No particular act or form of words
   is necessary to constitute delivery of a deed. Delivery may be
   presumed from facts and circumstances which show an intention
   to deliver.

4. ———: ———: ———. Where a grantor agreed to give certain
   land to a son, and subsequently executed a deed of conveyance,
   which was placed in the son's possession, this raises a presumption
   of delivery by the grantor.

5. **Quieting Title: LACHES.** Laches do not apply to a plaintiff, where
   infancy during a portion of the time in question and ignorance
   of his rights account for delay in asserting them, he having ex-
   ercised due diligence, and where the denial of an equitable claim
   would work inequity and injustice, and would defeat the original
   intention of the ancestral grantor.

6. **Limitation of Actions.** The statute of limitations runs only from
   the time plaintiff became informed, after the exercise of due dili-
   gence, that he was being defrauded in his rights. *Held*, evidence
   sufficient to excuse delay.

7. **Adverse Possession.** In a proper case, it is competent to show
   that possession of land by a grantor, after the execution and de-
   livery of a deed therefor, is in the nature of a trust for the grantee.
   The statute of limitations as against the plaintiff, daughter of the
   grantee, does not begin to run in such case until the vendor as-
   serts an adverse holding by some act brought to the knowledge of
   such plaintiff.

APPEAL from the district court for Dawson county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Cook & Cook,* for appellants.

*H. M. Sinclair, W. A. Stewart* and *J. H. Linderman,* contra.

ALDRICH, J.

This is a suit in equity brought by appellees, Calvin Raymond Brooks, Jennie Marie Floyd, Stella Etna Mainard, and Orlo Bryan Brocks, against the appellants and the appellee Ella Brooks, to quiet title in them to the northeast quarter of section 18, in township 10 north, range 24 west of the sixth P. M., in Dawson county.

Calvin J. Brooks was the grandfather of appellees herein and Ella Brooks was his daughter-in-law. Calvin M. Brooks was the father of appellees and son of Calvin J. Brooks. The record presents the issue: Did the land pass to Calvin M. Brooks by a deed from his father, Calvin J. Brooks? Is the decree sustained by the evidence and the law? The grandfather, Calvin J. Brooks, lived on a farm near North Platte, surrounded by his several sons, each one in possession of a farm their father had given them. Calvin M. Brooks, another son, lived with his family in Pennsylvania. The father wished to have his son who resided in Pennsylvania come to Nebraska, and as inducement offered to give him the land now in litigation. Calvin M. Brooks then moved his family to the home of the father in 1898, and lived there until his death, which occurred shortly after the execution of the deed, when he met with an accident that caused his death. After the death of Calvin M. Brooks, the son, the deed in question was destroyed without the knowledge or consent of plaintiffs and was never recorded. Ella Brooks, widow of Calvin M. Brooks, files an answer admitting that she was the wife and is the widow of Calvin M. Brooks and mother of plaintiffs herein, and further answering disclaims any interest, right or title in said premises.

Brooks v. Brooks.

The trial court entered a decree quieting title in plaintiffs. The issue is largely one of fact. Ella Brooks, mother of plaintiffs, testifies that she lived at Sterling, Colorado, that she is the widow of and was the wife of Calvin M. Brooks, that she is mother of plaintiffs, who lived in Pennsylvania until they came west in 1898. She further testifies that her husband received letters from his father, importuning him to come to Nebraska with his family, and make his home with him; that he, the father, would give him the land in question. On or about the first of January, 1898, Mr. and Mrs. Calvin J. Brooks and Calvin M. Brooks went to Cozad and executed the deed for the northeast quarter in question. On their return, Calvin M. Brooks had the deed in his possession and showed it to his wife, Ella Brooks, who said it was signed by Calvin J. Brooks and his wife. Ella Brooks further testified that her husband placed the deed in a writing-desk in the bedroom of the father and mother; that, after the death of Calvin M. Brooks, the father brought the unrecorded deed out and discussed it with the widow of the deceased son and burned it, saying he wanted to make different arrangements. Ella Brooks also said that, when she returned to Nebraska in 1907, Calvin J. Brooks told her he was going to give the children, plaintiffs herein, the land in question.

It is claimed that Ella Brooks' evidence is incompetent, as she had a direct legal interest in the result of the action, and that she was the representative of a deceased person. This objection is based upon a section of our statute (section 7894, Rev. St. 1913), and presents a law question which we may as well determine now as any other time. When persons are parties to an action, but not to the issue, and disclaim any interest in the subject-matter, they are competent. In the case of *Mester v. Zimmerman*, 7 Ill. App. 156, the supreme court of Illinois said: "A son of the mortgagor who had been made a party defendant to the foreclosure proceedings, but who by his answer disclaimed all interest in the event of the suit, and who had formally renounced the legacy left him by the mortgagor in his will,

is a competent witness upon the question of usury, when called by the other defendants." Also, in the case of *New American Oil & Mining Co. v. Troyer,* 166 Ind. 402, the supreme court of that state said: "Such a pleading of itself operates as an estoppel, and, between the parties and their privies, is an absolute bar to any further assertion of the right renounced." See *Greely v. Thomas,* 56 Pa. St. 35; *Jordan v. Stevens,* 55 Mo. 361; 12 Enc. of Evi. 769, note. See, also, *Denny v. Schwabacher,* 54 Wash. 689; *Fenton v. Miller,* 94 Mich. 204.

It is also true that in a case tried to the court without a jury the admission of improper evidence is simply error without prejudice. *Sharmer v. McIntosh,* 43 Neb. 509.

It has also been held by this court that since the amendment of 1883 (Laws 1883, ch. 83), with reference to the competency of an interested party to testify to a conversation or transaction had with a deceased person, a party adversly interested to the representative of the deceased is not incompetent. *Riddell v. Riddell,* 70 Neb. 472.

But it will be conceded that where persons, who are even parties to the action, but not to the issue, disclaim any interest in the subject-matter, they are competent witnesses. *Martin v. Martin,* 118 Ind. 227. It appears of record in the instant case that Ella Brooks filed a disclaimer denying every interest and claim of every character in and to the subject-matter of this case. Therefore, she has forever barred herself from hereafter setting up any claim of any character antagonistic to the results of this suit. Equity has very well said that in a case of this kind death closes the lips of the one and the law those of the other. It is axiomatic, then, that, if Ella Brooks is forever barred from hereafter setting up any claim of any character in the subject-matter of this suit, the record that she made here in the instant case will be a complete bar and final determination of her each and every claim. Therefore, the testimony of Ella Brooks was material and competent and properly received.

Another legal proposition raised is: Was there a delivery of the deed by the father to the deceased son? It will be admitted as a matter of law that no particular act or form of words or ceremony is necessary to constitute a delivery of a deed. In this case a delivery may be presumed from the grantee's possession of the instrument. That the father and mother went to Cozad for the express purpose of executing and delivering to the son, Calvin M. Brooks, a deed to this land in question is apparent, as Calvin M. Brooks had possession of the deed upon his return. This deed was a conveyance of the title to the identical land he had agreed to give to the son Calvin M. Brooks. Some very respectable text-writers have held that, when "a grantee has possession of the deed, this raises a presumption of its legal delivery to him on its date." Lawson, Presumptive Evidence (2d ed.) 491. This court has also held that "a deed takes effect only from the time of delivery. The possession of a deed by the grantee, in the absence of opposing circumstances, is *prima facie* evidence of delivery, and the burden of proof is on him who disputes this presumption." *Roberts v. Swearingen,* 8 Neb. 363. The destroying of this deed by Calvin J. Brooks and his statement that he wanted to make other arrangements are virtually an admission on his part of the execution and delivery of the deed. The possession of a deed by the grantee, it is held in *Strough v. Wilder,* 119 N. Y. 530, is *prima facie* evidence of delivery, where there is nothing to impeach the *bona fides* of the possession. We think the trial court was right in its finding that the deed to the land here was to Calvin M. Brooks, and that, after the death of Calvin M. Brooks, the father destroyed the deed in furtherance of his purpose to make other arrangements. In view of what we have hereinbefore said, we conclude that the trial court was justified in finding that there was a delivery by the grantor to the grantee of the title to the land in question, and this finding does equity to the plaintiffs, and is in accordance with Nebraska decisions and other cases herein cited

and discussed, and is in furtherance of the declared intent or wish of the father, Calvin J. Brooks, to settle his sons about him. It is fairly well established in this record that the father transferred this land to his son Calvin M. Brooks, that it was in furtherance of an original purpose of his to locate his sons around him, and if this deed is permitted to stand it simply fulfills his original intention, and it is sustained by the decedent laws of the state.

There are other questions here, but we now purpose to take up the question of the statute of limitations as applied to the widow, Ella Brooks, and her daughter, Stella E. Mainard. As to Ella Brooks the statute of limitations cannot run because she is here under oath with a disclaimer of every kind and character in the event of this suit. As to the daughter, Mrs. Mainard, throughout a greater portion of the time after the death of her father she was under age, and the statute of limitations could not apply prior to the time she was 18 years of age. In 16 Cyc. 168, it is said: "Infancy, when a right accrued, may excuse ignorance of such right and consequently a failure to assert it promptly after attaining majority."

In *Kern v. Howell*, 180 Pa. St. 315, 57 Am. St. Rep. 641, it is held that the possession of land by the vendor after the execution and delivery of a deed therefor is a trust for the vendee, and the statute of limitations does not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee. It is also the law that, if a parent purchases land in the name of his son, the purchase is deemed *prima facie* an advancement. This is the precise situation under the facts in this case. The statute of limitations cannot bar the interest of this plaintiff, Mrs. Mainard, because to invoke such a rule would be doing inequity and would defeat the consequences of the original intent of the deceased, Calvin J. Brooks.

It should be noted that during the greater part of the period in which this plaintiff, Mrs. Mainard, lived in

Nebraska she was a child, and it was only a few years after she became of age that she learned that she had been defrauded out of this land in controversy. The neighbors, after the death of her father, began to talk concerning the gift of the land in controversy to the father, and also of the plaintiffs herein coming into possession and ownership of this land. Their claim and their rights here are simply the natural claims and natural rights resulting from and normally included in the disposition made by Calvin J. Brooks, the grandfather, in his lifetime. From a review of the authorities cited, we conclude that the the statute of limitations does not apply here, and the doctrine of laches has no force and effect, for its application here would work inequity and injustice.

We concur in the finding of the trial court, and hold that this case must be, and it is,

AFFIRMED.

LETTON, J., dissents.